

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> MERRILL ROBERTSON, JR., SHERMAN C. VAUGHN, JR., and CAVALIER UNION INVESTMENTS, LLC, <br><br> Defendants. | Case No. 3:16cv667 <br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1.      From 2010 to 2016, Defendants Merrill Robertson, Jr. and Sherman C. Vaughn, Jr. used their company, Cavalier Union Investments, LLC ("Cavalier"), to fraudulently induce over 60 investors to invest more than $10 million in Cavalier investments. Defendants operated a Ponzi-like scheme using money from new investors to pay back old investors and finance their luxurious personal lifestyles.

2.      Defendants targeted unsophisticated senior citizens and former football coaches, donors, alumni, and employees of schools Robertson had attended and induced them to buy Cavalier's promissory notes that allegedly paid a fixed rate of return between 10 and 20 percent annually.

3.      To commit this fraud Defendants lied about their sophistication, the safety and security of the Cavalier promissory notes, and Cavalier's financial condition. Defendants portrayed themselves as experienced investment experts and Cavalier as a sophisticated company with various divisions, investment funds, and investment advisers. They claimed that Cavalier used investor money to invest in a broad range of business ventures, such as restaurants, real estate, alternative energy, and assisted living facilities, and that Cavalier's investment portfolio was "secured by tangible assets that yield higher returns than investments while providing safety and security for our investors."

4.      All of these representations were false. Cavalier did not have any divisions, investment funds, or investment advisers. Nor did it have a diversified investment portfolio. Cavalier was functionally insolvent shortly after it was formed and it relied on cash from investors to stay afloat and pay investors who requested their money back. The few investments it made were in restaurants that suffered substantial losses and ultimately failed. Defendants knew that Cavalier could not pay all its obligations. They began bouncing checks shortly after starting the business. And, by at least October 2013, Defendants could not make a required interest payment to its largest investor. By the end of August 2014, the restaurants that Cavalier had invested in had all closed. This did not stop Defendants from soliciting and collecting more money from unsuspecting investors.

5.      Unbeknownst to investors, Robertson and Vaughn treated Cavalier like their personal piggybank. They stole nearly $6 million in investor money and used it for themselves on things like cars, family vacations, spa visits, luxury goods, educational expenses for family members, and a luxury suite at a football stadium.

6.     As a result of the conduct described in this Complaint, Defendants Robertson, Vaughn, and Cavalier violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7.     The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to enjoin such acts, transactions, practices, and courses of business, to obtain disgorgement and civil penalties, and for other appropriate relief.

8.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9.     Venue lies in this judicial district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants Robertson, Vaughn, and Cavalier reside in this district and this district has been the principal place of business for Cavalier. In addition, certain of the acts, transactions, practices, and courses of business constituting the violations of the federal securities laws charged herein occurred within this judicial district.

10.     In connection with the conduct alleged in this Complaint, Robertson, Vaughn, and Cavalier, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or instrumentalities of, interstate commerce, or the mails, or the facilities of a national securities exchange.

## DEFENDANTS

11.     **Merrill Robertson, Jr.**, age 36, is a resident of Chesterfield, Virginia. Along with

Vaughn, he is a co-owner and Managing Principal of Cavalier. Between April 2008 and December

2009, Robertson worked for a large broker-dealer. He held series 7 and 66 securities licenses

during that time period. However, he is not currently registered as a broker. Robertson attended

Fork Union Military Academy and the University of Virginia, playing football for both schools. He

also played football professionally for the Philadelphia Eagles of the National Football League.

12.     **Sherman C. Vaughn, Jr.**, age 45, is a resident of Chesterfield, Virginia. Along

with Robertson, he is a co-owner and Managing Principal of Cavalier. He received a bachelor's of

science degree in business administration from Virginia Union University. He has never been

registered with the Commission in any capacity.

13.     **Cavalier Union Investments LLC** is a Virginia limited liability company based in

Midlothian, Virginia. Robertson and Vaughn formed Cavalier in February 2010. They own

Cavalier and are its principal officers. It is not registered with the Commission.

## FACTS

**I.      DEFENDANTS FRAUDULENTLY INDUCED INVESTORS TO BUY
         CAVALIER'S PROMISSORY NOTES.**

14.     Robertson and Vaughn formed Cavalier in 2010 and jointly ran the company.

Cavalier claimed to be a "leading private investment firm" catering to IRA account holders and

offering investments opportunities in restaurants, real estate, and alternative energy. Defendants

targeted their scheme at unsophisticated senior citizens and former football coaches, donors, alumni,

and employees of schools Robertson had attended. At all relevant times, Cavalier acted by and

through Robertson and Vaughn.

15.     Defendants marketed Cavalier's promissory notes and other Cavalier investments using Cavalier's website, marketing materials, and face-to-face meetings with prospective investors. Defendants represented to prospective investors in Virginia and in other states that Cavalier used investor money to invest in safe investments and investors would receive an annual fixed return of 10 to 20 percent.

16.     In total, Defendants used the material misstatements and omissions discussed herein to induce more than 60 investors located in multiple states to invest more than $10 million in Cavalier promissory notes and other Cavalier-related investments.

A.      **Defendants Misled Investors About Cavalier's Operations.**

17.     Defendants lied to investors about the operations of Cavalier, its investment portfolio, and its financial condition. Defendants falsely portrayed Cavalier as a sophisticated, successful company that generated strong fixed returns with limited risk. None of these things were true.

18.     To mislead investors by creating an air of sophistication and legitimacy, Defendants falsely stated on Cavalier's website and in its offering materials that Cavalier operated an investment fund and employed investment advisers who managed Cavalier's investments.

19.     Cavalier's website stated that:

    a.     investors could "depend on the professional and ethical judgment of [Cavalier]'s investment advisors to make decisions about the fund's portfolio of investments";

    b.     Cavalier's "investment advisors also meet with company executives, employees, suppliers, customers, and competitors to maximize value creation"; and

        c.     Cavalier had a "Food Division" and "CUI Energy."

20.    A Cavalier prospectus stated that the "investment advisor uses a system of multiple portfolio counselors in managing the fund's assets" and that Cavalier "relies on the professional judgment of its investment advisor to make decision[s]" concerning its fund.

21.    None of these statements were true. Cavalier had no funds, employed no investment advisers, and had no divisions. Cavalier was solely Robertson and Vaughn.

22.    At the same time Defendants were lying about their investment sophistication, they were hiding important facts about their true financial acumen. Indeed, Defendants failed to disclose that Vaughn filed for personal bankruptcy four times, including twice during the period when Defendants were soliciting investors to for Cavalier.

**B.    Defendants Misled Investors About Cavalier's Investment Portfolio.**

23.    Defendants claimed that Cavalier used investor money to acquire a diversified portfolio of tangible assets. On the Cavalier website, Defendants claimed that Cavalier owned restaurants, real estate, alternative energy, natural resource assets, a bottled water company, apartments and assisted living facilities. Similarly, Cavalier's website claimed that Cavalier intended to use investor money primarily to invest in cash producing tangible assets and "companies that offer superior opportunities for long-term capital growth[.]"

24.    In the Cavalier prospectus, Defendants promised investors that their investments would be used to purchase cash-producing tangible assets that would enable Cavalier to pay the rate of return specified on the promissory notes.

25.    Contrary to Defendants' assertions, Cavalier did not own any real estate, alternative energy, natural resource assets, apartments, or assisted living facilities. In fact, Cavalier only

invested in a few restaurants, and those entities all suffered substantial losses and failed during the course of the scheme.

26.     Even after their businesses faltered and failed, Defendants continued to raise money from investors without disclosing the true performance of the company.  For example, in 2016, Cavalier's website still listed Game Day Pizzeria and Sweet Frog restaurants as assets, even though both businesses had failed and been closed since 2014.

27.     By August 31, 2014, the handful of restaurants Defendants had invested in had ceased operating.  However, Defendants raised close to $1,000,000 from unsuspecting investors after that date.

28.     Defendants also falsely claimed that Cavalier held certain specific investments that it did not actually hold.  For example, the Cavalier website listed Burger King as part of the investment portfolio, but Cavalier never owned or even invested in a Burger King franchise.

C.     **Defendants Misled Investors About Cavalier's Financial Condition.**

29.     Defendants touted Cavalier as a "safe" investment and misled investors into believing that Cavalier could pay the promised rates of returns from its investment operations.  That was false.

30.     Shortly after Robertson and Vaughn formed Cavalier, it became functionally insolvent.  Cavalier depended on money from new investors to maintain Defendants' lifestyle and pay back old investors returns on their previous investments.  Indeed, in Ponzi-like fashion, Defendants used new investor money to pay money owed to old investors.

31.     Despite the inability to pay existing investors from Cavalier's ongoing operations, Defendants continued to solicit and accept funds from new investors without disclosing that

Cavalier could not meet its obligations to existing investors or that it had already failed to perform on its agreements with earlier investors.

32. To avoid detection, Defendants sent investors phony and meaningless account statements. These statements contained a representation of the current value of a given investor's Cavalier investments. But this value was worthless and did not accurately represent the value of Cavalier's assets or its ability to pay the promised returns.

33. Some of the statements represented that an investor's assets were held in a particular investment fund, such as "Cavalier Union Investments LLC Bond Fund B." But no such fund existed.

34. Defendants provided these statements with imaginary values to Cavalier investors to ensure that the investors would not discover the fraud or Cavalier's true precarious financial condition.

**D.** **Defendants Lied About Securing The Investments With A Security Agreement or Uniform Commercial Code Financing Statement.**

35. In an effort to deceive investors into believing that their individual investment was "secured," the Cavalier promissory notes Robertson and Vaughn provided to Cavalier's investors falsely stated that the investment would be secured by a security agreement and UCC financing statement. Specifically, the notes state:

> Borrower agrees that until the principal and interest owed under this promissory note are paid in full, this note will be secured by a security agreement and Uniform Commercial Code Financing statement giving Lender a security interest in the equipment, fixtures, and inventory and accounts receivable of the business known as Cavalier Union Investments.

36. Despite these representations, Defendants never created any security agreements or filed any Uniform Commercial Code financing statements. Moreover, any purported security interest in Cavalier's "equipment, fixtures, and inventory and accounts receivable" was itself

worthless since Cavalier was effectively insolvent since its inception in 2010, but this fact was not disclosed to investors.

37.    The promissory notes given to investors were signed by Robertson and, on at least one occasion, also by Vaughn.

## II.    DEFENDANTS FRAUDULENTLY INDUCED THEIR LARGEST INVESTOR TO INVEST ANOTHER $2 MILLION IN A NONEXISTENT WATER COMPANY.

38.    In March 2013, Defendants fraudulently induced an existing Cavalier investor to invest an additional $2 million in a purported water-bottling company called Drops, Inc. ("Drops").

39.    Defendants told the investor that Drops used a "unique" seven-step process to energize the water that Drops bottled and distributed to customers.

40.    In written materials that Robertson emailed to the investor's agent, Defendants falsely claimed that Drops was a public company, with actual sales, and with substantial projected sales and profits in the near future.

41.    In the same written materials, Defendants sent the investor fabricated Drops invoices and a fictitious Drops financial statement. The Drops invoices purported to show sales of hundreds of thousands of bottles of water, generating over $400,000 in revenues. The fictitious pro forma financial statement projected that Drops' revenue would increase to $30 million over five years. These projections were not grounded in any study, analysis, or evaluation, and were entirely created by Defendants to defraud the investor.

42.    In the Drops solicitation materials, Defendants also misrepresented Robertson's and Vaughn's qualifications. The documents stated that Robertson previously managed a $250,000,000 portfolio and that he formed "Black Bull Wealth Management," which was "the only minority firm on the east coast that manages funds, ranging from apartment funds, opportunity funds, development funds, as well as REITS." It stated further that "Black Bull Wealth Management

covers all aspects on financing ranging from stocks, bonds, mutual funds, CD, Real Estate, insurance." These representations were also false. While Robertson owned Black Bull Wealth Management, it never had any clients or managed any funds. The documents falsely stated that Vaughn was a former professional football player and that he earned an MBA from Virginia Commonwealth University.

43. To further induce the investor to invest in Drops, Defendants emailed the investor a fabricated letter purportedly from a large U.S. bank, which stated that Cavalier had $11,000,000 in its account with that bank. The letter was a fake. Cavalier never had $11,000,000 in any account and it never had an account with that particular bank. Vaughn drafted the phony letter and provided a copy to Robertson before it was sent to the investor.

44. Defendants knowingly fabricated and transmitted these false documents to the investor to induce him to invest additional funds with them.

## III. ROBERTSON AND VAUGHN MISUSED AND MISAPPROPRIATED INVESTOR FUNDS.

45. Defendants did not tell investors that Robertson and Vaughn used Cavalier as their personal piggy bank. Robertson and Vaughn misappropriated nearly $6 million of investors' funds for their own benefit, spending the misappropriated funds on things like cars, family vacations, personal debt repayments (such as mortgage debt and credit-card debt), luxury goods, clothing, entertainment, educational expenses for family members, and a luxury suite at a football stadium. They also misused investor funds by making various donations and gifts to alma maters, churches, and other third-parties who performed no services for Cavalier.

46. Defendants never disclosed that Robertson and Vaughn used this investor money for their own personal benefit. Defendants also did not disclose that that they used money from new investors to pay debts owed to other, earlier investors.

## IV.   DEFENDANTS VIOLATED THE SECURITIES LAW THROUGH THE MATERIAL MISSTATEMENTS AND OMISSIONS THEY MADE TO DEFRAUDED INVESTORS.

47.     During the relevant period, Robertson and Vaughn operated and controlled Cavalier.

48.     All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material, and were made in connection with the offer, purchase, or sale of securities. There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

49.     In connection with the conduct described herein, Defendants acted knowingly and/or recklessly.  Among other things, Defendants knew or were reckless in not knowing that they were making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances in connection with selling or offering to sell Cavalier promissory notes or other Cavalier-related investments.

50.     Robertson and Vaughn were each the ultimate authority for individual false and misleading statements each made orally or in writings directly attributable to them.  Robertson signed all of the promissory notes sold to investors, and he directed his son to generate the fictitious investor statements using numbers Robertson provided.  For other material attributable only to Cavalier, including material on the company website and in promotional materials including investor packets, because Robertson and Vaughn were the only two individuals engaged in the marketing and sale of Cavalier promissory notes, one or the other of them (or possibly both of them acting together) had ultimate authority.

51.     Through their material misrepresentations and omissions, Defendants knowingly, recklessly, or negligently obtained money or property from investors.  Defendants took over $10

million from investors, and Robertson and Vaughn misappropriated nearly $6 million for themselves.

52.     Through this scheme, Defendants knowingly, recklessly, or negligently engaged in acts, transactions or courses of business that operated as a fraud or deceit upon offerees, purchasers and prospective purchasers of the Notes.

53.     The Cavalier promissory notes defendants sold to investors are securities within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

## V.    DEFENDANTS VIOLATED THE SECURITIES ACT BY SELLING UNREGISTERED SECURITIES.

54.     The Defendants sold or offered to sell Cavalier's promissory notes, even though they had not filed a registration statement with the Commission and the promissory notes were not exempt from the registration requirements of the Securities Act.

55.     In connection with these sales or offers to sell, the Defendants made use of means or instruments of interstate transportation, or communication, or of the mails, including using the internet, interstate phone calls, and the United States mail.

### FIRST CLAIM FOR RELIEF
### Violations of Sections 5(a) and 5(c) of the Securities Act
### (Against All Defendants)

56.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 55, above, as if the same were fully set forth herein.

57.     As a result of the conduct alleged herein, Defendants Robertson, Vaughn, and Cavalier directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry

or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

58.     No valid registration statement has been filed with the Commission or has been in effect with respect to any offering or sale alleged herein.

59.     By engaging in the foregoing conduct, Defendants Robertson, Vaughn, and Cavalier violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### SECOND CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

60.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 55, above, as if the same were fully set forth herein.

61.     From at least 2010 through the present, as a result of the conduct alleged herein, Defendants Robertson, Vaughn, and Cavalier knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

        a.     employed devices, schemes or artifices to defraud;

        b.     obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

        c.     engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

62.     By engaging in the foregoing conduct, Defendants Robertson, Vaughn, and Cavalier violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
(Against All Defendants)

63.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 55, above, as if the same were fully set forth herein.

64.     From at least 2010 through the present, as a result of the conduct alleged herein, Defendants Robertson, Vaughn, and Cavalier, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

    a.      employed devices, schemes or artifices to defraud;

    b.      made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.      engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

65.     By engaging in the foregoing conduct, Defendants Robertson, Vaughn, and Cavalier violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants Robertson, Vaughn, and Cavalier from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Defendants Robertson, Vaughn, and Cavalier to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint.

### III.

Ordering Defendants Robertson, Vaughn, and Cavalier to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### IV.

Retaining jurisdiction of this action for purposes of enforcing any final judgments and orders; and

**V.**

Granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

Jonathan H. (Jay) Hambrick
Virginia State Bar No. 37590
Attorney for the Plaintiff
Office of the United States Attorney
919 E. Main Street, Suite 1900
Richmond, VA 23219-4625
Phone: (804) 819-5400
Fax: (804) 819-7417
Email: jay.h.hambrick@usdoj.gov

Sharon B. Binger
G. Jeffrey Boujoukos
David L. Axelrod
Kingdon Kase
John V. Donnelly III
Lawrence Parrish

Attorneys for Plaintiff:

**SECURITIES AND EXHANGE COMMISSION**
Philadelphia Regional Office
One Penn Center
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
donnellyJ@sec.gov

(*Pro hac vice* to be filed)

Dated: August 10, 2016